[Cite as *State v. Jones*, 2024-Ohio-683.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29784 |
| | : | |
| v. | : | Trial Court Case No. 2021 CR 02642 |
| | : | |
| DARNELL M. JONES | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 23, 2024

. . . . . . . . . . .

CLYDE BENNETT, II, Attorney for Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Darnell M. Jones appeals from his conviction following a no-contest plea to charges of possessing a fentanyl-related compound, aggravated drug possession, and two counts of having a weapon while under disability.

{¶ 2} Jones contends the trial court erred in overruling his motion for a hearing

pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to challenge the veracity of allegations in two search-warrant affidavits. He also alleges ineffective assistance of counsel based on his attorney's failure to present proof to support his *Franks* claim.

{¶ 3} We conclude that the trial court did not err in overruling the motion for a *Franks* hearing. We also see no ineffective assistance of counsel related to defense counsel's handling of the issue. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} A grand jury indicted Jones on the above-referenced charges, which stemmed from two August 7, 2021 searches of his home. On that date, officers with the Montgomery County sheriff's office began investigating a complaint about Jones assaulting his girlfriend, C.R., with a metal rod inside his Harrison Township residence. As part of the investigation, officers spoke with the victim, who reported that she had gone to a bar with Jones before accompanying him to his home. The victim claimed Jones became angry with her inside the house and hit her in the head with a metal bar or pipe.

{¶ 5} Law-enforcement officers apprehended Jones at his residence and transported him to jail. After he refused to consent to a search of his home, officers secured the property while Detective Kent Saunders obtained a search warrant. A municipal-court judge signed the warrant at 1:16 p.m. on August 7, 2021. Detective Saunders and other officers promptly executed the warrant and searched the home for the metal object and additional evidence related to the alleged assault. Among other things, they found the victim's hairpiece in the living room and a metal bar in a bedroom.

Detective Saunders also claimed to have seen firearms in plain view in the kitchen and drugs and cash in plain view in an open bedroom dresser drawer.

{¶ 6} Based on his observation of the firearms, drugs, and cash, Detective Saunders exited the home and sought a second warrant to search more extensively for evidence related to felonious assault as well as evidence related to drug and firearm offenses. The same municipal-court judge issued another warrant at 3:34 p.m. on August 7, 2021. Officers returned to the home and conducted a more thorough search resulting in discovery of digital scales, cell phones, various suspected illegal drugs, handguns, ammunition, and more than $10,000 cash.

{¶ 7} Following his indictment, Jones moved to suppress the seized evidence and incriminating statements. He later filed a supplemental motion requesting a hearing under *Franks* to test the veracity of Detective Saunders' search-warrant affidavits. The trial court held a suppression hearing on December 9, 2021, and January 14, 2022, primarily to determine the existence of probable cause based on a review of the search-warrant affidavits. The trial court denied Jones' request for a *Franks* hearing to challenge the truthfulness of Detective Saunders' averments. Although defense counsel had two witnesses ready to testify on the *Franks* issue, the trial court declined to hear from them based on its determination that Jones had not established his entitlement to a *Franks* hearing. The trial court nevertheless did allow defense counsel to proffer what the witnesses would have said. Defense counsel proffered that the first witness was a neighbor who would have testified that he saw Detective Saunders enter Jones' house immediately after another officer left to get the first warrant. Defense counsel proffered

that the second witness was C.R., the victim, who would have testified that there were no drugs or firearms in plain view in Jones' house when she was there the previous night and into the early-morning hours of August 7, 2021.

{¶ 8} On February 16, 2022, the trial court filed a decision, entry, and order overruling Jones' suppression motion and formally denying his request for a *Franks* hearing. Jones later pled no-contest to the charges set forth above. The trial court accepted the plea and made findings of guilt. Prior to sentencing, Jones moved to supplement a probation report with affidavits from three witnesses regarding the *Franks* issue. Accompanying the motion were affidavits from the neighbor, the victim, and a third person who had been present when police took Jones into custody. The trial court subsequently sentenced Jones to an aggregate four-to-six-year prison term without ruling on his motion regarding the affidavits. Jones appeals, advancing two assignments of error.

## II. *Franks* Hearing

{¶ 9} Jones' first assignment of error states:

THE TRIAL COURT ERRED IN DENYING DEFENDANT/ APPELLANT'S MOTION FOR A *FRANKS* HEARING.

{¶ 10} Jones contends the trial court erred in denying him a *Franks* hearing because defense counsel's proffer established (and testimony from two available witnesses would have confirmed) that Detective Saunders entered his residence before obtaining a search warrant and that no weapons or drugs were in plain view. Jones claims Saunders' first search-warrant affidavit omitted the fact that he had entered the house

before obtaining a warrant. He asserts that the second affidavit falsely stated that weapons and drugs were in plain view when he executed the first warrant. At a minimum, Jones asserts that defense counsel's representations entitled him to a hearing on the *Franks* issue so he could present testimony from his witnesses.

**{¶ 11}** Under *Franks*, a search violates the Fourth Amendment if it is conducted pursuant to a warrant based on an affidavit containing one or more false statements and these misrepresentations were made knowingly or in reckless disregard of the truth. *State v. Miser*, 2d Dist. Montgomery No. 25105, 2013-Ohio-1583, ¶ 12. Omissions qualify as false statements if they were intended to mislead or were made in reckless disregard of whether they would do so. *Id.* " '[E]xcept in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts.' " (Emphasis sic.) *State v. Blaylock*, 2d Dist. Montgomery No. 24475, 2011-Ohio-4865, ¶ 15, quoting *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir.1998).

**{¶ 12}** If the defendant makes a "substantial preliminary showing" that an intentionally or recklessly false statement was included in a search-warrant affidavit, and if the challenged statement is necessary to probable cause, a hearing must be held at the defendant's request. *Franks* at 155-156. At the hearing, if the defendant establishes a perjury allegation by a preponderance of the evidence, and, with the affidavit's false material excluded, the remaining content does not establish probable cause, the search warrant must be voided and the fruits of the search excluded. *Id.* at 156.

{¶ 13} "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* at 171. The allegations "should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.*

{¶ 14} With the foregoing standards in mind, we see no error in the trial court's refusal to hold a *Franks* hearing. In his first warrant affidavit, Detective Saunders averred that the victim claimed Jones, her boyfriend, had struck her in the head with a metal pipe. According to the victim, the assault occurred in Jones' home. Detective Saunders further averred that an eyewitness, A.S., had been in the home at the time and had confirmed the victim's account.

{¶ 15} In his proffer, defense counsel asserted that Detective Saunders unlawfully had entered Jones' house without a warrant shortly after another officer left to get the warrant. *See* Jan. 14, 2022 Suppression Transcript at p. 7, 17. One problem with this claim is that the warrant at issue says Detective Saunders personally appeared before the judge who issued it. Unless the issuing judge lied, Detective Saunders could not have been simultaneously searching Jones' house and applying for a warrant. A second problem is that the foregoing scenario does not raise a *Franks* issue. If Detective Saunders did prematurely enter the house without a warrant, he may have violated the

Fourth Amendment. But that act would not establish any falseness in the search-warrant affidavit's factual allegations regarding Jones' assault of the victim inside the house.

**{¶ 16}** Possibly in recognition of the foregoing problems, Jones contradicts counsel's proffer on appeal. He now argues that Detective Saunders personally searched the house without a warrant and found the metal bar. According to Jones, the detective then left the scene and obtained the first warrant, whereupon he returned and searched the house again and, apparently, found the bar again. Even if we ignore the fact that this scenario is at odds with defense counsel's proffer, we see no substantial preliminary showing of a *Franks* violation. Once again, if Detective Saunders entered the house without a warrant, he may have violated the Fourth Amendment. But even if he did so and omitted that fact from his first affidavit, the omission was not critical to a finding of probable cause. The affidavit included allegations from the victim and an eyewitness claiming that Jones had struck the victim in the head with a metal pipe inside his home. Even if Detective Saunders had entered the home before obtaining a warrant, that fact would not detract from the probable cause established by the statements from the victim and the eyewitness.

**{¶ 17}** With regard to the second search-warrant affidavit, Detective Saunders included the same averments supporting the first warrant. He also included additional information about what he saw when he executed the first warrant. Detective Saunders averred that in a bedroom he saw "an open drawer containing a large amount of cash and a brown paper bag containing a large amount of suspected illegal narcotics." He further averred that he saw two handguns on the top shelf of a kitchen cabinet and that

he had knowledge of Jones being under a weapons disability. According to Detective Saunders, these items were in plain view when he executed the first warrant.

{¶ 18} In his proffer, defense counsel stated that the victim had been in every part of the house the previous night and into the early-morning hours and that she had not seen any drugs or weapons in plain view. On appeal, Jones contends the victim was present at the suppression hearing and was prepared to testify that Detective Saunders' averments about observing weapons and contraband in plain view were false.

{¶ 19} Even if we accept defense counsel's proffer and Jones' claim about what the victim would have stated, we see no substantial preliminary showing of a *Franks* violation. Notably, the victim's claimed observations occurred at least several hours before law-enforcement officers took Jones into custody and secured the house. According to defense counsel, the latest the victim made her observations was in the early-morning hours of August 7, 2021. When officers initially spoke to her that morning, she was at a different residence in the city of Dayton. During the suppression hearing, Detective Saunders testified that officers spoke to the victim again at the hospital roughly between 7:00 a.m. and 9:00 a.m. The detective also testified that he was not dispatched to Jones' house until around 12:00 noon or the "early afternoon hours." Therefore, the officers did not apprehend Jones at his home until roughly noon or later, and the first search warrant was not issued until 1:16 p.m.

{¶ 20} Given the foregoing timeline, Jones likely had been home without the victim there for hours before his arrest. That being so, the victim's claim that she did not see any weapons in the kitchen or any drugs in an open bedroom drawer did not conflict with

Detective Saunders' averments about later observing those items in plain view. Depending on what time the victim left Jones' house, the detective's search could have occurred as many as ten or more hours later. A non-contradictory explanation for the difference between what the victim saw and what the detective observed is that Jones placed the firearms in the kitchen and opened his dresser drawer after the victim left. In light of that simple explanation, we find no substantial showing of a *Franks* violation. Therefore, the trial court did not err in declining to hold a hearing. The first assignment of error is overruled.

### III. Ineffective Assistance of Counsel

{¶ 21} Jones' second assignment of error states:

DEFENDANT/APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT WHEN HIS COUNSEL FAILED TO PROPERLY AND TIMELY PRESENT PROOF TO SUPPORT HIS *FRANKS* CLAIM.

{¶ 22} Jones contends his attorney provided ineffective assistance by failing to substantiate the alleged *Franks* violations with affidavits at the suppression hearing. He also claims defense counsel provided ineffective assistance by proceeding on the second day of the suppression hearing in Detective Saunders' absence. Jones reasons that if the detective had been present he could have been cross-examined to prove the falseness of his search-warrant averments. Finally, Jones asserts that defense counsel's filing of three affidavits just before sentencing proves that defense counsel knew his prior

performance had been prejudicially deficient.

{¶ 23} We review alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which was adopted by the Ohio Supreme Court in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To prevail on an ineffective-assistance claim, a defendant must show that trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. Failure to make a showing of either deficient performance or prejudice defeats an ineffective-assistance claim. *Strickland* at 697.

{¶ 24} To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688. In evaluating counsel's performance, a reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings." *State v. Jackson*, 2d Dist. Champaign No. 2004-CA-24, 2005-Ohio-6143, ¶ 29. To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus.

{¶ 25} Upon review, we see no ineffective assistance of counsel. A request for a

*Franks* hearing should be supported by "[a]ffidavits or sworn or otherwise reliable statements of witnesses," or their absence should be explained. *Franks* at 171. Although defense counsel did not present affidavits to support Jones' request for a *Franks* hearing, counsel had two witnesses ready to testify in lieu of affidavits. The trial court deemed their testimony unnecessary, instead permitting defense counsel to proffer what they would have said if called. In our view, defense counsel's production of actual witnesses adequately explained the absence of affidavits. We note too that Jones was not prejudiced by the lack of affidavits given defense counsel's ability to proffer the two witnesses' testimony.

{¶ 26} Defense counsel also did not provide ineffective assistance by proceeding on day two of the suppression hearing in Detective Saunders' absence. Defense counsel had a full opportunity to cross-examine the detective about the affidavits on the first day of the hearing. At no time during that cross-examination did the detective admit including any false statements in his affidavits. We have no reason to believe the detective would have made such admissions if only he had been cross-examined again the second day. As explained more fully above, we also see no basis for a *Franks* hearing even if we assume, arguendo, that Detective Saunders entered Jones' house before obtaining the first warrant and that the victim did not see any weapons or contraband in plain view the previous night. Accordingly, we find no deficient performance and no prejudice to Jones based on defense counsel's failure to object to Detective Saunders' absence from the second day of the suppression hearing.

{¶ 27} The three affidavits Jones filed shortly before sentencing likewise do not

establish ineffective assistance of counsel. The first affidavit was from the neighbor who claimed to have seen Detective Saunders unlawfully enter Jones' house. The affidavit stated that the detective entered the house without a warrant and came back outside holding a stick. The neighbor then saw the detective enter again and leave for about an hour before returning with a paper and going inside yet again. Jones contends this affidavit supports the proposition that Detective Saunders searched the house without a warrant before leaving, obtaining a warrant, and searching it again. We fully addressed this issue in our analysis of the first assignment of error, and the neighbor's affidavit adds nothing new.

{¶ 28} A second affidavit was from Jones' girlfriend, C.R., the alleged victim of the assault. Consistent with defense counsel's proffer and Jones' appellate argument, C.R. averred that she did not see any open drawers, drugs, or cash in plain view when she was inside Jones' house. Once again, we fully considered this argument in our analysis above, and the victim's affidavit adds nothing.

{¶ 29} The third affidavit was from A.S., who was present when Jones allegedly assaulted his girlfriend. According to Detective Saunders' two search-warrant affidavits, A.S. also was at the scene when law-enforcement officers initially arrived at Jones' house. In his affidavit, A.S. averred that he had cleaned inside the house just minutes before police arrived to secure the scene. A.S. averred that the firearms, drugs, and money were not in plain view when he finished cleaning. This affidavit was more helpful to Jones than the affidavit from the victim, who had not been in the home for at least several hours before the search. Given the temporal proximity of the claims in A.S.'s affidavit to the

search, A.S.'s allegations, if true, would cast doubt on the truthfulness of Detective Saunders' averments about observing guns, drugs, and money in plain view.

{¶ 30} We nevertheless conclude that A.S.'s affidavit fails to demonstrate ineffective assistance of counsel. During the suppression hearing, defense counsel identified two witnesses who were prepared to testify in support of a *Franks* violation. Those witnesses were Jones' neighbor and Jones' girlfriend. Defense counsel did not identify A.S. as a potential witness during the suppression hearing, and counsel did not proffer anything on behalf of A.S. Indeed, nothing in the record suggests that defense counsel even knew A.S. had anything helpful to offer when the trial court resolved the *Franks* issue. As a result, the record does not portray ineffective assistance of counsel based on defense counsel's failure to obtain an affidavit from A.S. or to proffer A.S.'s testimony at the time of the suppression hearing.

{¶ 31} We note too that A.S.'s affidavit came too late to establish any error in the trial court's *Franks* ruling. As noted above, defense counsel filed the affidavit shortly before sentencing. By that time, the trial court already had overruled Jones' suppression motion and denied his request for a *Franks* hearing. Jones also had pled no contest, and the trial court had accepted the plea and made findings of guilt. In order to re-litigate the *Franks* issue based on A.S.'s new affidavit, Jones first would have needed to seek and obtain permission to withdraw his no contest plea. But he never sought to withdraw his plea. Instead, defense counsel simply filed the three affidavits and moved to have them included with a probation or presentence-investigation report, apparently so they would be part of the record on appeal. Therefore, none of the affidavits demonstrate error in the

trial court's denial of a *Franks* hearing. For all of the foregoing reasons, we overrule Jones'

second assignment of error.

## IV. Conclusion

**{¶ 32}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J., and TUCKER, J., concur.